IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:08CR385 |
| v. | ) | |
| | ) | |
| PRECIOUS MATTHEWS | ) | |
| | ) | |
| Defendant | ) | |

## STATEMENT OF FACTS

Were the United States to proceed to trial in this case, it would provide testimonial, documentary and real evidence to prove beyond a reasonable doubt that, from no later than June 2007 through August 1, 2008, in the Eastern District of Virginia and elsewhere, defendant PRECIOUS MATTHEWS (the "Defendant") did unlawfully, willfully and knowingly agree, combine and conspire with others to execute and attempt to execute a scheme or artifice (i) to defraud a financial institution and (ii) to obtain moneys, funds and credit owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses and representations in violation of Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud). Specifically, the evidence would establish, at a minimum, the following facts:

Defendant was a member of a conspiracy to defraud financial institutions of substantial sums of money by fraudulently assuming the identities of account holders on existing home equity line of credit loans (HELOC), and causing financial institutions to transfer funds from those HELOC accounts to overseas bank accounts controlled by co-conspirators.

Defendant and other co-conspirators carried out their fraudulent scheme by first identifying individuals who held large HELOC accounts, typically greater than $200,000. To identify victims, Defendant and her co-conspirators obtained lists of first and second mortgage borrowers from direct marketing companies that sold lists of sales leads for mortgage products. Defendant and other co-conspirators obtained personal identifying information, including social security numbers, password clue information, and signature exemplars for victims from a variety of online sources. Defendant and other co-conspirators also fraudulently obtained unauthorized access to potential victims' credit reports on publicly available credit report ordering websites to obtain information about potential victims' bank and HELOC accounts.

Once members of the conspiracy identified a target HELOC account and account holder and completed gathering personal identifying information about the target, certain members of the conspiracy called customer service contacts at target financial institutions and impersonated the HELOC account holders. Defendant was tasked by TOBECHI ONWUHARA, her boyfriend and the person she understood to be the leader of the conspiracy, with making fraudulent calls when the targeted HELOC account holder was a woman. Defendant would also make fraudulent calls to target victims to confirm their addresses and employment information by impersonating a delivery service or a court clerk. ONWUHARA would provide Defendant with the personal identifying information and HELOC account information about the victim account holders prior to her making fraudulent calls. To create the false appearance that the call originated from the HELOC account holders, Defendant's co-conspirators would use a caller id spoofing service to cause a false phone number to appear in the call recipient's caller identification display.

After providing the correct account information for a HELOC account holder, the fraudulent caller would first verify the unused balance on a HELOC account if the caller did not already know that information. Next, the caller would transfer funds out of the HELOC account and into a checking or savings account—although this was sometimes accomplished by logging into the victim's online account. Then, the caller would request a wire transfer of the funds to a foreign bank account controlled by members of the conspiracy. When a financial institution required written confirmations of wire transfer requests, Defendant and her co-conspirators would request that the financial institution email or fax the wire transfer form to a free, web-based email account established by one or more members of the conspiracy. Members of the conspiracy subscribed to a fax-to-web service that converted incoming faxes to a free web-based email account. The co-conspirator would then complete the wire transfer form and forge the HELOC account holder's signature based on exemplars obtained from loan documents and publicly-available, property-record databases. Additionally, the fraudulent caller would call the account holder's phone company and have the victim's home phone number forwarded to a pre-paid cell phone in the possession of one of the co-conspirators for a period of several hours in order to receive confirmation phone calls from the financial institution.

Defendant and her co-conspirators would direct the wire transfers to be directed to overseas bank accounts controlled by other members of the conspiracy. These overseas co-conspirators would keep a percentage of the fraudulently obtained proceeds and then cause the remainder of the proceeds to be transferred to accounts in Nigeria or the United States controlled by the U.S.-based members of the conspiracy, typically the Defendant.

From June 2007 through July 2008, Defendant received wire transfers of funds fraudulently obtained from the scheme in the amount of at least $976,745 in U.S. currency. The majority of these transfers came from an individual in Asia who the Defendant knew as "MIKE." Prior to her receipt of a wire transfer of funds into her account, Defendant would receive a text message from MIKE, informing her of the incoming transfer. Defendant would then distribute a portion of those proceeds among other members of the conspiracy, and would keep the remainder. From at least June 2007 through July 2008, Defendant used fraudulently-obtained proceeds from the scheme to pay the mortgage on her primary residence in Miramar, Florida and for a 2008 Acura vehicle, VIN 19UUA76598A045701.

As part of this fraudulent scheme, on or about December 7, 2007, TOBECHI ONWUHARA, impersonating the holder of a HELOC account with the United States Senate Federal Credit Union ("USSFCU"), called USSFCU's customer support in the Eastern District of Virginia, provided the account holder's personal account information, and fraudulently caused USSFCU to execute a wire transfer in the amount of $280,000 dollars from Victim 1's account to a co-conspirator's bank account in Korea. The victim account holder resides in Alexandria, Virginia, which is in the Eastern District of Virginia.

On or about January 22, 2008, the Defendant received a wire transfer into her Bank of America account of funds fraudulently-obtained from the scheme in the amount of $110,000 in U.S. currency. On the same day, the Defendant caused a wire transfer of funds fraudulently-obtained from the scheme in the amount of $25,000 in U.S. currency to be sent from her Bank of America account to co-conspirator BRANDY ANDERSON.

4

On or about February 11, 2008, the Defendant received a wire transfer into her Bank of America account of funds fraudulently-obtained from the scheme in the amount of $129,946 in U.S. currency.

On or about April 30, 2008, the Defendant received a wire transfer into her Bank of America account of funds fraudulently-obtained from the scheme in the amount of $55,942 in U.S. currency.

On or about May 20, 2008, the Defendant received a wire transfer into her Bank of America account of funds fraudulently-obtained from the scheme in the amount of $99,961 in U.S. currency.

On or about June 12, 2008, the Defendant received a wire transfer into her Bank of America account of funds fraudulently-obtained from the scheme in the amount of $100,000 in U.S. currency.

        Respectfully submitted,

        Dana J. Bonete
        Acting United States Attorney

By: _____
        John Eisinger
        Assistant United States Attorney

        Tyler G. Newby
        Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, PRECIOUS MATTHEWS and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*[signature]*
PRECIOUS MATTHEWS
Defendant

I am PRECIOUS MATTHEWS's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

*[signature]*
Samuel J. Rabin, Jr.
Attorney for PRECIOUS MATTHEWS

Date: 11/19/08