UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

CASE № 1:08-CR-385-TSE

UNITED STATES OF AMERICA,

      *Plaintiff,*

v.

PRECIOUS MATTHEWS,

      *Defendant.*

_____/

## SENTENCING MEMORANDUM
## (MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE)

COMES NOW, the Defendant, **PRECIOUS MATTHEWS,** by and through undersigned counsel, and pursuant to the provisions of Federal Rule of Criminal Procedure 32, and United States Sentencing Guidelines §§ 6A1.2-3, hereby requests downward departures and/or variances from the Sentencing Guidelines for the factual and legal reasons set forth herein. In support hereof, we aver the following:

### STATEMENT OF FACTS

1.    The probation officer has identified facts that warrant departure and/or variances from the Federal Sentencing Guidelines. *See,* in part, Presentence Investigation Report at pp. 7-8, §§ 29; p.9, § 35; p. 12, § 48; p. 15, §§ 64-66; p. 15, § 63.

    A.    The Court may impose a lesser sentence, not as a downward departure, but as a variance, under 18 U.S.C. §§ 3553 (a)(2)(C) and (a)(6) and under

*United States v. Booker*, 543 U.S. 220 (2005) owing to **Ms. MATTHEWS'** lack of a criminal record that thus places her in the position of being a "true" first offender.

B.     The Court may consider a variance under 18 U.S.C. § 3553 owing to the fact that **Ms. MATTHEWS** had no control over the amount of money that was targeted, the amount transferred or the amount received by Mr. Onwuhara. **Ms. MATTHEWS** had no control over the amount of money she received from Mr. Onwuhara's schemes and, in fact, she received a total for her own use of less than $35,000.

C.     The Court may impose a downward departure under USSG § 5K2.12 owing to the fact that **Ms. MATTHEWS'** behavior resulted from unusual coercion and duress from co-defendant Mr. Onwuhara.

D.     The Court may impose a downward departure under USSG § 5K2.12 or a variance under 18 U.S.C. § 3553 because **Ms. MATTHEWS** is a battered partner that Mr. Onwuhara so mentally, emotionally and physically abused that she was not able to exercise free control.

E.     The Court may impose a downward departure under USSG § 5K2.1 owing to **Ms. MATTHEWS'** chronic depression and bipolar disorder.

F.     The Court may substitute community confinement for prison. Application Note 6 to USSG §5C1.1 authorizes the Court to depart to permit substitution of community confinement than otherwise authorized for an equivalent number of months of imprisonment.

2.     The case now before this Court for sentencing involves a single count charging **MS. MATTHEWS** with conspiracy to commit bank fraud.  **MS. MATTHEWS** was arrested on the charge on August 1, 2008.  **MS. MATTHEWS** was filled with remorse for her actions, and she advised her attorney <u>immediately</u> that she wished to enter a guilty plea of guilty and cooperate with the government in her case.  A plea agreement was prepared, and just over two (2) months after the date of her arrest **MS. MATTHEWS** entered her guilty plea before this Court.

## MEMORANDUM OF FACT AND LAW

### A. MS. MATTHEWS' LACK OF A CRIMINAL RECORD PLACES HER IN THE POSITION OF BEING A "TRUE" FIRST OFFENDER AND WARRANTS A VARIANCE UNDER 18 U.S.C. §§ 3553 (A)(2)(C) AND (A)(6)

**MS. MATTHEWS** is a young woman who is a first-time offender.  Although the guidelines do consider this position by placing the Defendant in a Category I, the Court nevertheless may impose a lesser sentence, not as a downward departure, but as a variance under both USSG §§ 3553 (a)(2)(C) and (a)(6) and  *Booker, supra*, that provide that the court may consider a defendant's lack of a criminal record when it places her in the position of being a "true" first offender.  *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008).  In fact, USSG §§ 3553 (a)(2)(C) and (a)(6), now strongly suggest that a below-guideline variance is appropriate when a "true" first offender gets a lower sentence than the advisory range suggested for all the other persons with some criminal history that are lumped into Criminal History Category I.  Undersigned counsel suggests that offenders, like **MS. MATTHEWS**, with zero criminal history points, have

lower recidivism rates than offenders with one or more criminal history points, and offenders who have never been arrested have the lowest recidivism risk of all and thus pose little or no risk of recidivism and no danger to the community. *See, United States v. Duane*, 533 F.3d 441 (6th Cir. 2008); *United States v. Cabrera*, 567 F.Supp.2d 271 (D. Mass. 2008).

Expanding on the above, in *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006), the Court of Appeals agreed with the sentencing judge that a downward variance from 108 months to 78 months would mean more to the first time offender defendant in that case than to a defendant who previously had been imprisoned. Thus, the court found that consideration of this factor is consistent with the directive of § 3553 that the sentence reflect the need for "just punishment." *See, United States v. Willis*, 479 F.Supp.2d 927 (E.D.Wis. 2007).

### B. A VARIANCE UNDER 18 U.S.C. § 3553 IS WARRANTED BECAUSE MS. MATTHEWS HAD NO CONTROL OVER THE AMOUNT OF MONEY THAT WAS TARGETED, TRANSFERRED OR RECEIVED BY MR. ONWUHARA

The facts of the instant case are similar to cases involving drugs where a defendant who has little knowledge of, or control over, the amount or purity of the drugs that were part of the scheme. For example, in *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997), the district court ruled that the sentencing judge has discretion to depart where the defendant had no knowledge of, or control over, the amount or purity of the drugs. *See, United States v. Chalarca*, 95 F.3d 239, 245 (2d Cir.1996) (upholding a downward departure when the district court found the defendant had no knowledge of

any particular quantity of cocaine and no particular quantity was foreseeable to him in connection with the conspiracy of which he was a member).   In the case of *United States v. Jaber*,  362 F.Supp.2d 365 (D. Mass. 2005), the sentencing judge granted the defense request for a downward departure from 57 months to probation in part because defendant was merely a functionary, the defendant  did not take a profit, the defendant had even less control over the direction of the enterprise than the co-defendant, the defendant took orders from another co-defendant, and the amount of pseudo ephedrine that passed through the defendant's hands reflected someone else's decisions, not those of the defendant.

Respectfully, undersigned counsel suggests that **MS. MATTHEWS** may be as much victim as perpetrator in Mr. Onwuhara's scheme.   In 2001, **MS. MATTHEWS** met co-defendant Tobechi Onwuhara and came under his controlling hands.   At that time, **MS. MATTHEWS** was a beautiful, impressionable, chronically depressed eighteen (18) year old girl working as a waitress at a local club, and Mr. Onwuhara presented himself to her as an affluent, experienced, professional businessman.   **MS. MATTHEWS** easily was influenced by this apparent "man of the world."   Mr. Onwuhara sucked **MS. MATTHEWS** in, and she remained under Mr. Onwuhara's control for eight (8) years. During the period of Mr. Onwuhara's illegal operation, **MS. MATTHEWS** had no control over the amount of money that was targeted, the amount transferred or the amount received by Mr. Onwuhara.   **MS. MATTHEWS** had no control over the amount of money she received from Mr. Onwuhara's schemes and, with respect to the instant offense,

Ms. Matthews received approximately $35,000 from the total amount of funds Mr.

Onwuhara transferred into her account.   Ms. Matthews was used by Mr. Onwuhara.

Ms. Matthews was dominated by him and coerced to help him in his criminal activity.

### C. The Court May Impose a Downward Departure and/or Variance Under USSG 5K2.12 and 18 U.S.C. § 3553 Because Ms. Matthews' Aberrant Behavior Resulted From Coercion and Duress From Co-defendant Mr. Onwuhara

Looking at the totality of the facts of this case, Ms. Matthews' behavior

constituted "aberrant conduct," or its equivalent principle, which is a mitigating factor

under 18 U.S.C. § 3553(a).   During this time, Mr. Onwuhara beat Ms. Matthews, hit her

with his fists on her arms, face and back, slapped her and kept Ms. Matthews in a

constant state of fear and subservience.   Mr. Onwuhara dominated Ms. Matthews' life,

threatened her, manipulated her depression to maintain his control over her, and finally,

his control over Ms. Matthews was so complete that she acted as the vehicle who

received wire transfers on his behalf.   The PSR at page 7-8, ¶ 29 states that Ms.

Matthews received "at least $976,745" in wire transfers and "was allowed to keep a

portion of those proceeds." What the PSR does not reveal is that Ms. Matthews never

had direct access to any of the funds; Ms. Matthews received approximately $35,000

from the total funds transferred; the money Ms. Matthews was given by Mr. Onwuhara

was to buy a car they both used, and to pay the mortgage on a house Ms. Matthews

lived in with Mr. Onwuhara, but in which she had no legal or equitable interest.   In

effect, Ms. Matthews was at the mercy of Mr. Onwuhara.   If he didn't want her to do

something, she didn't do it.  If **Ms. Matthews** wanted to purchase something, she had to ask Mr. Onwuhara for the money for the purchase.  If **Ms. Matthews** wanted to go somewhere, she had to check with Mr. Onwuhara first before leaving the premises. Clearly, as the PSR suggests, **Ms. Matthews'** role in these events was as no more than a sluice — a channel to transfer money from one place to another.

### D. A Downward Departure Under USSG § 5K2.1 is Warranted Owing to Ms. Matthews' Chronic Depression and Bipolar Disorder

**Ms. Matthews** has a normal level of intelligence and, absent psychiatric issues, undiagnosed until 2006, **Ms. Matthews** would not be standing before this Court as a Defendant.  **Ms. Matthews** has suffered from a debilitating and chronic form of depression, coupled with other serious psychic impairments, for most of her life.  Her diagnosed and untreated depression and bipolar disorder led her into a spiral of self-medication beginning at age thirteen (13) when, as noted in the PSR at page 15, ¶ 66, **Ms. Matthews** "began using marijuana.... She continued to use marijuana on a regular basis, and at the time of her arrest in August 2008, she was smoking every day" — using the drug that, in her neighborhood, was obtainable easily — illegal marijuana and alcohol.  **Ms. Matthews** is <u>not</u> a drug/alcohol addict whose depression stems from abuse of these substances.  Rather, **Ms. Matthews** is a depressed individual whose depression, until recently had not been diagnosed properly, and had not been treated according to an accurate diagnosis.

In 2006, **Ms. Matthews'** depression became so severe that she sought treatment from Dr. Patricia Wilcox who diagnosed **Ms. Matthews** with chronic

depression and bipolar disorder.   **Ms. Matthews** was unable to remain long in treatment with Dr. Wilcox because Mr. Onwuhara moved **Ms. Matthews** and his operations to Miami.   In Miami, **Ms. Matthews** contacted Dr. Debra Anderson who agreed with Dr. Wilcox' diagnosis and prescribed the psychotropic drug Lexapro to help treat **Ms. Matthews'** illnesses.   In the medical community, Lexapro is considered to be an effective and usually well-tolerated prescription medication that improves the quality of life for adults suffering from depression — a disease that affects millions of Americans each year.   Believed to be caused by an imbalance of certain chemicals in the brain, called neurotransmitters, Lexapro also is used to treat generalized anxiety disorder (GAD) — an overwhelming sense of apprehension and fear. Anxiety symptoms experienced by **Ms. Matthews** commonly are associated with depression and can result in aberrant behavior when combined with on-going bipolar disease.   Used under a doctor's supervision, Lexapro significantly may improve symptoms of depression and anxiety, but it is a powerful medicine that can have substantial negative side affects. When **Ms. Matthews** began experiencing negative side effects, she stopped taking the medication.   **Ms. Matthews** did not contact Dr. Anderson about her reaction to the drug because, by this time, **Ms. Matthews** was pregnant again and was afraid to take any medications.

**Ms. Matthews** attempted to commit suicide on two separate occasions, the first time on July 17, 2007 and again on July 27, 2008.

### E.  A DOWNWARD DEPARTURE UNDER USSG 5K2.12 OR VARIANCE UNDER 18 U.S.C. § 3553 IS WARRANTED OWING TO MS. MATTHEWS' POSITION AS A BATTERED PARTNER

MS. MATTHEWS' subservient and oppressive relationship with Mr. Onwuhara resulting in a battered emotional, psychological and physical condition can be considered by the Court as a ground for a downward departure or variance.  *See, United States v. Whitetail*, 956 F.2d 857 (8th Cir. 1992).  In the case of *United States v. Apple*, 915 F.2d 899, 903 n.12 (4th Cir. 1990), for example, a case similar to the present case, the sentencing judge granted a downward departure where the defendant was a battered wife who suffered from chronic depression, and in *United States v. Gaviria*, 804 F.Supp. 476 (E.D.N.Y. 1992), the sentencing judge justified a downward departure based on the defendant being subservient to her husband.  In the case now before the Court, MS. MATTHEWS meets all of those criteria even if she was not married legally to Mr. Onwuhara.

An additional component that the Court may consider in conjunction with that of MS. MATTHEWS' battered persona is that Mr. Onwuhara so abused MS. MATTHEWS that her behavior resulted from unusual coercion and duress.  *See,* U.S.S.G. §5K2.12.  Even if it is argued that MS. MATTHEWS did not suffer duress sufficient to constitute a full defense to the criminal conduct, courts have held that a defendant is entitled to a downward departure if she was battered in the course of the coercive and controlling conduct by another and suffered chronic depression.  *See, United States v. Johnson*, 956 F.2d 894, 901 (9th Cir. 1992); *United States v. Apple*, 915 F.2d 899, 903 n.12 (4th

Cir. 1990); *United States v. Cheape*, 889 F.2d 477 (3d Cir. 1989); *United States v. Hall*, 71 F.3d 569 (6th Cir. 1995); *United States v. Meyers*, 952 F.2d 914, 920 (6th Cir. 1992); *United States v. Garza-Juarez*, 992 F.2d 896, 910-912 (9th Cir. 1993); *United States v. Isom*, 992 F.2d 91 (6th Cir. 1993).

What words best describe **MS. MATTHEWS'** situation while with Mr. Onwuhara? Battered, coerced, under duress, chronically depressed and perhaps even emotionally imprisoned all fit her circumstances. Certainly **MS. MATTHEWS** experiences ran the gamut of mental, emotional and physical pain of a battered spouse. **MS. MATTHEWS** tried to remove herself from her environment by **twice** attempting suicide — acts for which she was so ashamed that she could not tell the probation officer about them. At the time of her arrest, both of **MS. MATTHEWS'** wrists were bandaged from her second (and most recent) suicide attempt. In addition, both times this young and physically healthy woman became pregnant, she was unable to carry the baby to term. To what extent Mr. Onwuhara's mental, emotional and physical beatings had on **MS. MATTHEWS'** inability to carry her babies to term will never be known, but any individual who has experienced expectant parenthood must recognize that the kind of stress suffered by **MS. MATTHEWS** cannot have been good for the health of her pregnancies.

**MS. MATTHEWS'** chronic depression and bipolar disorder was aggravated by the abuse heaped on her by Mr. Onwuhara, and the Court may consider these debilitative and depressive disorders under USSG § 5K2.1. *See, United States v. Cockett*, 330

F.3d 706 (6th Cir. 2003) *Karis v. Calderon*, 283 F.3d 1117, 1134 (9th Cir. 2002); *United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993).

### F. APPLICATION NOTE 6 TO USSG §5C1.1 AUTHORIZES THE COURT TO DEPART TO PERMIT SUBSTITUTION OF COMMUNITY CONFINEMENT RATHER THAN IMPRISONMENT

MS. MATTHEWS asks this Court to substitute community confinement for prison. Application Note 6 to USSG §5C1.1, authorizes the Court to depart to permit substitution of more community confinement than otherwise authorized for an equivalent number of months of imprisonment for treatment. In part, this authorization in Application Note 6 treating restitution as a mitigating factor, is foundationed on many of the considerations raised in this Memorandum, especially issues relating to imprisonment of a first-time offender who had no control over the operation of the scheme or the amount of money being stolen and whose crime was characterized by aberrant behavior overlaid with coercive controls over her every action by the man she loved. In addition, community confinement will contribute to the goals of sentencing in that MS. MATTHEWS will be able to work to provide restitution to the victims of the scheme. *See*, *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006); *United States v. Bortnick*, 2006 WL 680544 (E.D.Pa., March 15, 2006) (unpub.); *United States v. Coleman*, 370 F.Supp.2d 661 (S.D.Ohio 2005); *United States v. Peterson*, 363 F.Supp.2d 1060 (E.D. Wisc. 2005); USSG §§ 3553(a)(7), 3553(a)(2)(D) and 3553(a)(3).

Last, 28 U.S.C. § 994 (j) has stressed "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense,"

and the case now before the Court certainly qualifies for such consideration. Further, after *Booker*, this Court may consider MS. MATTHEWS' lack of a prior record even against any argument that it already has been taken into account by the guidelines. *United States v. White*, 506 F.3d 635 (8th Cir. 2007).

## CONCLUSION

MS. MATTHEWS is fortunate to have a supportive family and gainful employment. MS. MATTHEWS, her family and undersigned counsel respectfully request this Honorable Court recognize that MS. MATTHEWS has been profoundly affected by her arrest, time spent in jail to date and her plea before this Court. She is deserving of another chance; of an opportunity to show that she can, and in fact has, turned her life around without being incarcerated. Although she cannot change the past or erase the wrongs, she can make a difference in her future and in the futures of those she loves and love her.

Since her arrest, MS. MATTHEWS has reached down, confronted her demons, discovered her character and pulled herself up. MS. MATTHEWS is an intelligent young woman who still has much good to contribute to her community and to her country. MS. MATTHEWS has obtained employment at WalMart, and in the few short months she has been employed there, she has been promoted from a sales person to an Assistant Manager. MS. MATTHEWS <u>does</u> have a future, and she is a young woman who is not likely ever again to engage in any criminal activity. In light of the above, undersigned counsel asks this Court to consider the goals of § 3553 and to believe in MS. MATTHEWS

— to believe that she is a good young woman for whom substantial prison time serves no purpose.

Respectfully submitted,

_____/s/_____
Andrew A. Protogyrou, Esq.
**PROTOGYROU & RIGNEY, P.L.C**
Counsel for Defendant
215 East City Hall Avenue
Norfolk, Virginia  23510
Tel:  757-625-1775
Fax:  757-625-1887
Email: protogyrou@prlaw.org

Virginia Bar № 27253

_____/s/_____
Samuel J. Rabin, Esq.
**SAMUEL J. RABIN, JR. P.A.**
Counsel for Defendant
Eastern National Bank Building
799 Brickell Plaza, Suite № 606
Miami, Florida 33131
Tel:   305-358-1064
Fax:   305-372-1644
Email: sjr@miamilawyer.com
Florida Bar № 273831

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of January 2009, a true and correct copy of the foregoing Sentencing Memorandum (Motion for Downward Departure and/or Variance) was furnished to all counsel on the list of counsel designated to receive electronic filings in this case.

_____/s/_____
Andrew A. Protogyrou, Esq.
**PROTOGYROU & RIGNEY, P.L.C**
Counsel for Defendant
215 East City Hall Avenue
Norfolk, Virginia  23510
Tel:  757-625-1775
Fax:  757-625-1887
Email: protogyrou@prlaw.org

Virginia Bar № 27253

_____/s/_____
Samuel J. Rabin, Esq.
**SAMUEL J. RABIN, JR. P.A.**
Counsel for Defendant
Eastern National Bank Building
799 Brickell Plaza, Suite № 606
Miami, Florida 33131
Tel:   305-358-1064
Fax:   305-372-1644
Email: sjr@miamilawyer.com
Florida Bar № 273831